# CHARLESTON.

IN RE: J. W. SEXTON *et als. v.* HOWARD B. LEE, *Attorney General.*

(No. 5565)

Submitted November 3, 1925. Decided November 10, 1925.

1. MUNICIPAL CORPORATIONS—*Form of Ballot Held Not to Render Bond Election Invalid.*

    Failure to use the form of ballot prescribed in section 12, chapter 14, Acts 1923, in an election held by a municipality upon the question of issuance of municipal bonds for street improvement to be paid for in whole or in part by assessment against abutting property, does not render the election invalid. (p. 391.)

    (Municipal Corporations, 28 Cyc. p. 1591.)

2. SAME—*Ballot for Bond Elections Indicating Intention of Voter Sufficient.*

    If the form of ballot to be used in municipal bond elections be not prescribed by statute, a ballot which will clearly indicate the intention of the voter on the proposition submitted will suffice. (p. 393.)

    (Municipal Corporations, 28 Cyc. p. 1591.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

From the approval by Howard B. Lee, Attorney General, of a proposed bond issue of the City of Buckhannon, J. W. Sexton and others, taxpayers, appeal.

*Affirmed.*

*William T. George* and *C. N. Pew,* for appellants.
*Young & McWhorter,* for appellee City of Buckhannon.

LIVELY, PRESIDENT:

In anticipation of special assessments upon abutting property owners, the City of Buckhannon by a three-fifths majority vote at a special municipal election held August 11, 1925,

authorized the issuance and sale of $103,000.00 in bonds bear-ing 5% interest payable semi-annually, maturing annually from 1927 to 1936, for the purpose of street improvement. The Attorney General, acting under the statute, approved the bonds on Sept. 15, 1925; and this appeal was awarded from that approval, on petition of certain taxpayers.

Three grounds are urged against the validity of the bonds: (1) that no provision was made for payment of semi-annual interest prior to 1927 when $11,000. of the bonds were to be retired; (2) that there is discrimination in payment of engi-neering expenses; and (3) that the form of the ballot used is insufficient under the bonding act, Chap. 14, Acts 1923. The ground last mentioned seems to be chiefly relied upon.

That the semi-annual interest payment is not provided for prior to 1927 would not necessarily invalidate the bond issue. Levy may be made to take care of the interest and provide for the retirement of the bonds beginning with the year 1926, and the ordinance of submission authorized payments of the interest to be made semi-annually. In this connection it is also urged that a levy of twenty-five cents on the one hundred dol-lar valuation will not produce sufficient revenue to pay off and discharge one-tenth of the indebtedness falling due in the year 1927, including the interest, and by calculation on the present assessed value the amount derived will fall short of the re-quired amount by probably $200.00. That the special rate may be insufficient for payment of the bonds and interest will not invalidate the issue. 5 McQuillin Mun. Corp. Sec. 2271. The assessed valuation may increase or decrease, and the rate is dependent thereon. Moreover, these bonds are for the pur-pose of raising money to carry on the improvement anticipa-tory of repayment to the city by assessments against the abut-ting property owners who pay one-tenth of their assessments each year, with the power of anticipating payment; and the city may rely to some extent upon these payments. See Sec. 49c, Chap. 47, Barnes' Code 1923. It cannot be demonstrated that the tax rate will not in fact take care of the bonds and interest as they become due.

On the second ground of invalidity it is asserted that because engineering expenses on some of the streets are to be paid out of the proceeds of the bonds while as to such expense on other streets to be improved it is not so provided, for that reason the bonds should be declared invalid. The entire expense of every kind will be paid out of the bond money primarily, and the general taxpayers re-imbursed by the abutting property owners by assessments. These assessments are regulated by statute and any inequality between the abutting property owners is taken care of in that way. Each property owner may appear and protect his interests in the making of these assessments. Moreover, the petitioners do not point out on what streets they reside, whether they own property on any of the streets proposed to be improved, or in what way they would be affected, if at all, by reason of the alleged discrimination.

But, as above indicated, the two foregoing grounds are not stressed in the briefs; the chief contention on the part of petitioners being that the election is vitiated because of the form of the ballot used. It is contended that Sec. 12, Chap. 14, Acts of 1923, provides the form of the ballot to be used, in which it shall be substantially shown: (1) the name of the political division issuing the bonds; (2) the amount of the bonds; (3) the time the bonds are to run; (4) the rate of interest; (5) the purpose of the bonds; (6) the authority to levy taxes to pay the bonds and interest; (7) instructions to the voter how to cast his ballot by ''X'' mark in the squares printed before the words ''yes'' and ''no''. Petitioners say that this provision of the statute is mandatory, and failure on the part of the city to follow it, makes the election void. The ballot used read:

''City of Buckhannon. Special Bond Election

(Indicate how you desire to vote by a cross-mark in the square)

[    ] For ratification of bonds.

[    ] For rejection of bonds.''

While the form of ballot above set out is the one prescribed by subdivision 5 of sec. 49b, chap. 47, of the Code, it is contended that this section was repealed by implication by sec. 26, chap. 14, Acts 1923; and therefore the last named section and act being mandatory, and not having been followed in substance, the election must fail. Counsel cite many authorities to the effect that mandatory provisions of election laws must be followed, including *Baer* v. *Gore,* 79 W. Va. 52 and *State ex rel. Simon* v. *Heatherly,* 96 W. Va. 685. Special reliance is placed on *Coleman* v. *Town of Eutaw,* 47 So. Rep. 703. The Attorney General in approving the bonds took the position that the requirement of the various items of information to the voter on the ballot as required by the Act of 1923, was directory rather than mandatory; and that full information having been given in the proclamation calling the election by publication in all of the newspapers of the municipality, once a week for four successive weeks, and posted at each voting precinct as required by law, no one could have been misled, and every voter knew what proposition he was called to vote upon; citing *Lawson* v. *County Court,* 80 W. Va. 612. But whether the form of ballot prescribed in the Act of 1923, as above set out, or one like it in substance, is mandatory or directory does not arise in the case at bar, for as pointed out by counsel for the city, that act does not supersede "any general or special law providing for the issuing of bonds for any improvement to be paid for in whole or in part by assessment against abutting property". See Sec. 26 of the Act. The Act of 1923 relates to serial bonds which may extend over 34 years; while bonds for improvement to be paid for in whole or in part by special assessments on abutting property cannot run beyond 10 years from date of issuance. Can we say that the form of ballot provided has changed or affected any general or special law governing this bond issue? We have been unable to find any prescribed form of ballot for bond elections of this character, unless it be that set out in Sec. 49b, Chap. 47, Code. What then shall the ballot show on its face? What form shall be used? There is no contention here that any one was deceived or misled either as to the pur-

pose of the election or how his ballot would be counted. The ordinance published and posted must be read in connection with the ballot used. It is presumed that the voters fully understood. The election was hotly contested, and it appears that there had been other elections for the same purpose formerly held, and vacated because of some defect in the proceedings. The validity of bond issues should be sustained if possible. Unless it is reasonably clear that the rights of the electorate have been prejudiced, the courts are not quick to declare such elections void. 5 McQuillin Mun. Corp. Sec. 2271. Informalities which do not affect the result of a municipal bond election or its fairness, will not necessarily render the election invalid. *Knight* v. *West Union,* 45 W. Va. 194; *Janeway* v. *Duluth,* 65 Minn. 292. Unless the form of the ballot is prescribed by the statute, any ballot clearly showing the intention of the voter is sufficient in form. *Hubbard* v. *Woodsum,* 87 Me. 88 (in this case the words ''yes'' and ''no'' made up the ballot); *Janeway* v. *City of Duluth,* 65 Minn. 292, approving *Truelsen* v. *City of Duluth,* 61 Minn. 48, 63 N. W. 714; and *Milwaukee* v. *Kossuth,* 41 Iowa 57.

The election was special, the proposition voted upon was simple, and the ballot when voted clearly indicated the desire of the voter. As the form of ballot prescribed in the Act of 1923, does not apply to elections of this character, and there being no form of ballot prescribed, we cannot hold that the ballot used is such an irregularity, if an irregularity at all, as will invalidate the election. The Attorney General's approval of the bonds will be affirmed.

*Affirmed.*