# ALFRED GREEN AND OTHERS v. INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 1, STEVENS COUNTY, AND OTHERS.[1]

February 4, 1955.

No. 36,408.

*Johanson, Winter & Lundquist, Briggs, Gilbert, Morton, Kyle & Macartney,* and *Frank J. Hammond,* for appellants.

*Thomas J. Stahler, Dorsey, Colman, Barker, Scott & Barber,* and *DeForest Spencer,* for respondents.

[1]Reported in 68 N. W. (2d) 493.

CHRISTIANSON, JUSTICE.

Action was brought in the Stevens county district court to enjoin defendant school district, its officers, and members of its board from issuing or selling $400,000 of school district bonds purported to have been authorized at a special election held in the school district on April 17, 1953, and to have the election declared void.

Plaintiffs, residents, taxpayers, and voters in said district, bring this action in their own behalf and in behalf of all other persons similarly situated. Defendants moved to dismiss the action for lack of jurisdiction of the court over the subject matter and upon the further ground that the allegations of plaintiffs' complaint failed to state a claim upon which relief could be granted. Because of the presentation of matters outside of the pleading, the motion to dismiss was treated and disposed of as a motion for summary judgment under Rule 56 of Rules of Civil Procedure pursuant to Rule 12.02. Plaintiffs appeal from the judgment entered for defendants in accordance with the trial court's determination that the form of the question submitted on the ballot at the special election was proper, that no genuine issue as to a material fact was presented, and that defendants were entitled to summary judgment.

On March 16, 1953, at a meeting of the school board of defendant school district, a resolution was passed stating that it was expedient for the school district to borrow $400,000 "for the purpose of the erection of a new school house and/or the expansion, improvement and equipment of its school houses." By another resolution it was determined that the question of the proposed issuance of bonds therefor be submitted to the voters on April 17, 1953, at a specified time and place in the city of Morris, Minnesota. Notice of the election was published in the Morris Sun, a legal newspaper, for two successive weeks beginning on March 24, 1953, and the election was held as scheduled. The ballot for the election contained the following question to which the voters were to answer "Yes" or "No":

"Shall Independent—Consolidated School District No. 1 of Stevens County, Minnesota issue bonds in the maximum principal amount

of $400,000.00 for erection of a new school house and/or expansion, improvement, and equipment of its school houses?"

The result of the election was 667 votes in favor and 654 votes against the bond issue. One ballot was spoiled or blank.

Plaintiffs contend that the ballot employed in the special election did not comply with statutory requirements because it necessitated a vote of "yes" or "no" on the internally alternative proposition of issuing bonds in the maximum principal amount of $400,000 for the "erection of a new school house and/*or* expansion, improvement, and equipment of its school houses." (Italics supplied.)

M. S. A. 125.06, subd. 2,[2] requires that the school board be authorized by the voters at a regular meeting or election or special meeting or election before erecting, leasing, or purchasing necessary schoolhouses or making additions to existing structures. Correspondingly, § 475.58, pertaining to the power of a school district to issue bonds to acquire or improve schoolhouses,[3] provides, with certain inapplicable exceptions, that "no obligation shall be issued without first obtaining the approval of a majority of the electors voting on the question of issuing the obligation, * * *."

The obvious import of these statutes is to subject the plans of school boards regarding the initiation and issuance of school district bonds for school building construction and improvement projects to electoral approval and to limit the discretionary powers of the board in this area.[4] As distinguished from the frequently approved form of ballot question which combines several proposals constituting

---

[2]M. S. A. 125.06, subd. 2, provides: "When authorized by the voters at a regular meeting or election or at a special meeting or election called for that purpose, it may acquire necessary sites for school houses, or enlargements or additions to existing school house sites, by lease, purchase, or condemnation under the right of eminent domain; erect, lease, or purchase necessary school houses, or additions thereto; * * *."

[3]Section 475.52, subd. 5, provides: "Any school district may issue bonds for the acquisition or betterment of schoolhouses, gymnasiums, athletic fields stadia, teacherages, or school garages; * * *."

[4]See, Muehring v. School Dist. No. 31, 224 Minn. 432, 436, 28 N. W. (2d) 655, 658.

segments of a particular improvement plan,[5] the form of the question submitted on the ballot in the instant case ostensibly presented three *alternative* proposals regarding bond issuance and possible projects for joint electoral approval or disapproval under §§ 125.06, subd. 2, and 475.58. The alternative proposals were: (1) erection of a new school building; (2) improvement, equipment, and expansion of existing school buildings; or (3) a combination of new construction and improvement. Final selection between these alternatives was not to be made by the voters but was left to the discretion of the school board without electoral sanction of its ultimate decision.

The provisions of § 124.02, subd. 2,[6] prescribing election rules for annual and special[7] elections in independent school districts, clearly condemn the combination of alternative electoral authorization proposals in such a manner as to vitiate the discriminatory nature of an elector's vote by stating:

"* * * Each proposition or question submitted shall be stated separately in the notice and on the ballots."

The fundamental economic differences[8] between borrowing and spending $400,000 on improvement of existing facilities, or con-

[5]*E.g.*, Pittsburgh Board of Education v. Davis, 120 Kan. 768, 245 P. 112; Public Schools v. Vander Laan, 211 Mich. 85, 178 N. W. 424; Howard v. Independent School Dist. No. 1, 17 Idaho 537, 106 P. 692 (notice of election); Parks v. School Dist. No. 1, 22 Ariz. 18, 193 P. 838 (notice of election); contra, Stern v. City of Fargo, 18 N. D. 289, 122 N. W. 403, 26 L.R.A.(N.S.) 665.

[6]The statutory title of § 124.02, subd. 2, apparently restricts its application to "Districts maintaining one school." However, since this title was not included in the act passed by the legislature but merely added in the process of compilation of L. 1941, c. 169, art. 5, § 2, it does not affect application of the statute to a school district maintaining more than one school but utilizing only one polling place as in the instant case. See Allen v. Holm, 243 Minn. 96, 101, 66 N. W. (2d) 610, 613.

[7]Section 124.02 deals primarily with annual elections but is made applicable to special election by § 124.08, which states, *inter alia:* "Such special election shall be held in the same manner as provided for annual election."

[8]A legislative distinction between "acquisition" and "betterment" is recognized under the public indebtedness statutes. Section 475.51, subd. 7, pro-

struction of new facilities, or a combination of such plans, might prevent many voters from favoring all three plans.[9] The vice of the ballot in the instant case lies in the fact that the tri-proposal question makes it impossible to ascertain whether a majority of the votes was obtained to authorize any one of the three proposals as required by §§ 125.06, subd. 2, and 475.58 because the electors could not approve of their choice without also voting for its alternatives.[10] Thus, without extending discussion into an evaluation of the numerous authorities concerning application of the general "double question" rule to ballots connecting propositions with "and,"[11] "or,"[12] and "and/or,"[13] we find that the form of the question submitted

vides: "'Acquisition' includes purchase, condemnation, construction, and acquisition of necessary land, easements, buildings, structures, machinery or equipment." Section 475.51, subd. 8, provides: "'Betterment' includes reconstruction, extension, improvement, repair, remodeling, lighting, equipping and furnishing." This distinction is maintained in § 475.52, subd. 5, authorizing the issuance of school district bonds, which refers to "acquisition *or* betterment of schoolhouses, * * *." (Italics supplied.) Obviously the conditions compelling a voter to favor betterment of a school building might not lead him to favor construction or purchase of a new school building or vice versa.

[9]The question of issuing bonds in the amount of $400,000 for the construction of a new schoolhouse was defeated by a vote of 356 to 338 at an election held in defendant school district on January 20, 1953, approximately three months before the election in question.

[10]Drummond v. City of Columbus, 136 Neb. 87, 285 N. W. 109, affirmed on rehearing, 136 Neb. 99, 286 N. W. 779; see, Allard v. Board of Education, 101 Ohio St. 469, 129 N. E. 718; Baumann v. City of Duluth, 67 Minn. 283, 285, 69 N. W. 919, 920; cf. Truelsen v. City of Duluth, 61 Minn. 48, 63 N. W. 714.

[11]See cases cited in footnote 5.

[12]The majority of courts approve the use of the conjunction "or" with respect to the "purchase" or "erection," or practically equivalent words, of water works or the like. *E.g.*, Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 277 N. W. 291; see, 15 McQuillin, Municipal Corporations (3 ed.) § 40.09, p. 263.

[13]Compare Drummond v. City of Columbus, 136 Neb. 87, 285 N. W. 109 (disapproving), with Ollilo v. Clatskanie Peoples' Utility Dist. 170 Ore. 173, 132 P. (2d) 416 (approving form of question seeking electoral approval for

on the ballot in the instant case contravenes the requirements of § 124.02, subd. 2. For the reasons stated the special election should be declared void and the issuance and sale of said bonds enjoined.

In view of this disposition of the appeal and defendants' admission that the district court had jurisdiction "to inquire fully into the legal efficacy of the ballot question submitted,"[14] it becomes unnecessary to consider the other questions raised.

Judgment reversed.

---

acquisition of certain properties for the development and transmission of electric energy by "purchase and construction, or by construction").

[14]Cf. Truelsen v. City of Duluth, 61 Minn. 48, 63 N. W. 714; Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24.